morning is United States v. EID. Okay. Well, go ahead. We'll sort it out. Good morning, Your Honors. Good morning. Scott Boyd of Counsel for Lawfirm of Christensen and Jensen. I am counsel for Mark Tracy, slash, the government in this key TAM matter against Immigration Irrigation District, which we call EID. As I just briefly mentioned, we actually have three separate appeals. So my plan is to give you three or four. Yeah, let's start with the key TAM case and then we'll move on to attorney fees. 184109. My hope is to give you just some quick additional background that I think could be helpful. Then, because there have been so many pleadings, I think this is actually a fairly well-plead case and there's a lot of information there. You all likely have questions. Answer some questions and then I want to be able to reserve some time for dealing with the attorney's fees at the end. This all started when the residents of Immigration Canyon rejected an EID bond in about 1995. Shortly thereafter, a large developer went into, oh, Immigration Canyon, beautiful canyon just outside of Salt Lake, actually close to downtown. It's gorgeous, has a very nice creek, very valuable land if you have water. Large developer tried to develop a project called Immigration Oaks, multi-million dollar homes. The developer didn't have enough water and the wells he dug ended up affecting other wells and they ended up running into issues so they could not provide the water. EID agreed to take over the water for the developer and came up with a plan to use bond funding using the Drinking Water State Revolving Fund through the Federal Safe Drinking Water Act. As is alleged in our complaint, there's a couple problems with this. Number one, you cannot use those monies for development. You can only use those monies basically for repair and to fix a system. And then number two, it is specifically under the EPA rule, 62552370 for financially disadvantaged communities. Immigration Oaks is the exact opposite of that. As this was being reviewed by the Utah Division of Drinking Water, a gentleman by the name of Dr. Anisko recognized that this project allegedly to repair the water for 67 residents was adding a million gallon reservoir, which he called preposterously oversized and recognized that would be a violation and what was obviously for development. We think with discovery, what happened is Dr. Anisko wrote a memo. This memo was forwarded to EID and to his bosses. On the memo he basically said, I'm not signing off on this, no. We have reason to believe that EID did not disclose this memo to the full board. We know this because one of the board members has talked to us and said, I had no idea. Well, do we need to get into the merits of the key town when our question here is statute of limitations? Absolutely. So let's fly. First of all, quick answer on why didn't the U.S. attorneys intervene? Because there's a six year statute of limitations and they recognize that the 10th Circuit precedent. They made it very clear. I don't want to tell you what they told me. If this gets back and we get past the statute of limitations, they're going to revolve. That's outside of the record. Yes, thank you. Well, it's not dispositive of any issue anyway, whether they decided to join. We would never have a relator here if the government turning down a case meant it was no good. Right. Right. Well, there'd be a lot less key town cases every single time they turn one down. Various reasons why they take or don't take cases. I have reason to believe they're interested in the case if it comes back. Obviously, on the statute of limitations issue, one of the key things was Sikenga. Sikenga got overturned recently in Cochise Consultancy. That was the 9-0 decision. So now we're at a 10 year statute of limitations. Now we're at a 10 year statute of limitations. So the district court heard in concluding that a shorter statute of limitations applied, so we have to reverse that decision. Yes or no? Yes. Okay. Right, which appears to be better. Is that all we have to do today? I would love to be able to say that that's all you have to do to say it, but that's not what they're going to argue. What they're going to argue is, is that even if there's a 10 year statute of limitation, that there's a problem factually about whether or not there's enough information. On accrual? On accrual? Yes. Okay. And what's your theory on accrual? Well, there's a couple different theories on accrual. First of all, it's obviously written out. It's clear in the pleadings. I think what we have is a distinct difference in opinion about when this thing began. Key being, was it at the moment that there was agreement made between EID and whomever was signing the bonds? Or was it when EID did the work, made claims, and was paid out of the escrow fund for the work that they performed? Our argument is, and has been, is that on a fraud, when the fraud is to be able to get monies that you were not entitled to get, the government damage occurs when that money is paid out. So, you guys will be able to see, again, there's a lot of pleadings on this, and it's somewhat messy. At the end of the day, and even though every day I wish our clients had gotten this to us sooner, at the end of the day, there was one set of payments out of six. That was paid. That would be within the 10-year statute of limitations. When did the government make it? Assuming, for the moment, that payment is the key date for accrual, when did the government make its last payment? Wasn't that when the bond closed on November 21st, 2002? And didn't you assert in your original pleadings it was when the bond closed, although you had the date in 2005 instead of 2002, which at that point would have been within the six-year limitation period? Yeah, we had a little bit of confusion on that. Actually, both sides have had confusion. I think because of the way we actually titled it. Well, let me get back to my question then, which is, why isn't, assuming payment is the key date, why isn't it what you originally seemed to think it was, which was when the bond closed on November 21st, 2002? Because there wasn't a payment made to EID at that point. All that happened is the government money, as well as other monies, went into escrow. The government's reliance occurred back in 2002, though, the act that's problematic here on the misrepresentations. Right. Well, the misrepresentations are whether or not and how they're going to be building this project. And it wasn't until the project – Those would have occurred before 2002. The building of the project? No, no, the misrepresentations. Well, our argument is the misrepresentations have continued throughout. Every single time that they made a claim for payment – But it prompted the government to ultimately agree to – It prompted the government to put money into an escrow account. From that escrow account, no monies come out until there's a separate claim made by EID that we have done the following work, now we're entitled to money. Who do they make the claim for payment to? DDW. Division of Drinking Water was the one who was handling the escrow account. That's a Utah agency. That is a Utah agency, not a U.S. government agency. And you will notice in the third amended complaint, there's a reason why we actually have Utah government employees who are actually part of this complaint now, is because basically Utah was self-certifying that this thing was being done properly. And the reality was it wasn't. They knew it wasn't, but they didn't care because they wanted to be able to get to the federal funding. And that's the whole point of the key TAM and the federal – Accepting that as true, where is the false statement to the federal government? Because you can't pursue a key TAM action for a false statement to a state agency. Oh, when they were filing everything out for it for federal funding, I am almost 100 percent certain that there is another level that they have to go to to be able to get an approval. Do you have a record site on that? I don't have a record site, but that's part of the other issue. All this is on a motion to dismiss. We haven't been able to do any – Well, I mean, you should be able to find that. That seems like that would be a publicly available document. And we can certainly look and see if we can find it. I do not know that information right off hand. Right. Do you have a case where somebody has made a claim for payment to a state government agency and they were able to rely on that as the false statement to the federal government? Again, we can look for that. I do not have a case that I can cite to you at this moment on that. All right. But, again, arguably, this is in some ways no different than any time somebody self-certifies. You know, this is EID self-certifying to the state, state self-certifying to whatever federal agency is providing the funding fund. Obviously somebody had to do that. So what do they have to say to get the money? I'm assuming there's some kind of a schedule that they've presented as part of their project and they say we've completed phase one. And the state of Utah says, yes, you have, here's $500,000. Here's one-sixth of the payment or here's whatever the case may be as you finish different parts of the project. Okay. So do you have, I mean, what's false about that? I mean. Well, the reality is what was false was the whole project should not have been allowed to go forward. Right. Because it wasn't. But that was approved. I mean, that was approved based on an allegedly false statement prior to 2002. It was approved, but, again, the monies did. Let's flip it slightly. What happens if somebody new comes on the EID board, sees the memo, and says, whoa, wait a minute. We can't do this. This is improper use of the money, and they stop work. Where does the money go out of the bond? Okay. Obviously, whatever percentage is left is going to go back to the federal government. That money has not yet been, quote-unquote, spent. It's put into a bond. It's being held there. It's in escrow. I have four minutes left, and we still have the two attorney's fees, one. So do you have, if you have something really important. Well, let me just ask you this. If we reverse remand on the statute of limitations, don't we have to send the whole thing back on attorney fees? Oh, absolutely. Who's the prevailing party? I mean, we don't know. Okay. So maybe I don't need to reserve four minutes. Thank you. But, yes, that's exactly right. Okay. Thanks. Thank you. Thank you, Your Honors. Jeremy Cook, arguing on behalf of the appellees. Your Honors, there's three issues in this case. First, should the court affirm the dismissal of the lawsuit because the claims are barred by the 10-year statute or repose? Second, should the court affirm there were attorney's fees against Mr. Tracy? And third, should the court reverse the district court's decision denying attorney's fees against Christensen and Jensen? Counsel conveniently just ignored the statute. The statute in this case, the statute repose found in the False Claims Act is very clear. It says, under 31 U.S.C. 3731b2, in no event may civil action be brought more than 10 years after the date the violation is committed. It's also really clear what a violation is for purposes of the statute. Under 31 U.S.C. 3729, a violation occurs when a person knowingly presents or causes to be present a false or fraudulent claim for payment, so a false claim for payment, or knowingly makes, uses, or causes to be made a false record or statement material to a false claim for payment. Appellant doesn't allege or argue that either of these occurred within the 10-year statute of repose. Did the district court look at the 10-year period when it opined on this case? It did not in its original decision because Sakango, or yeah, sorry, the decision in Sakango was so clear that it didn't need to. But on the attorney's fees, it did. Judge Parrish did say that the claims are barred under both the six-year statute of limitations and the 10-year statute of repose. She also, in her decision- Part of our appeal here is from the dismissal on the statute of limitations issue. Yes. And now the law has changed, so don't we have to reverse? No, Your Honor, because as the court is certainly aware, the court can affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court. In this case, we did argue below that, obviously, we're going to argue that Sakango is controlling. It was controlling. It was 10th Circuit precedent. But we specifically argued that it didn't matter because even if Sakango was overruled, they were barred under the 10-year statute of repose. The problem we have, though, is I understand that you argued that fully, and the legal argument may be there, but as I read the district court's order, didn't she utilize that September 29, 2004 date as the last possible date? And that was not within the six-year limitation period, but now that would barely be within the 10-year limitation period, and I think your argument is that's not the right date. And I don't think the district court necessarily thought that was the right date either, but she said that's the last possible. So don't we need that district court now to say, all right, here's the date, here's the last final date? No, Your Honor, you don't, because in order for that date to have any relevance, the court would first have to accept that payment is when the statute of repose runs in this case. That's a pure matter of law. There's no way to read into the statute of repose in the False Claims Act to say payment. It doesn't ever say in there the statute of repose runs from the date of payment. This is a statute of repose, not a statute of limitations. And in Judge Parrish's order, her amended Memorandum of Decision ordering motion to dismiss, in footnote 5, she spent almost an entire page distinguishing between a statute of limitations and a statute of repose. Citing to the Supreme Court case in CTS Court v. Waldenburg, Judge Parrish recognized that a statute of repose bars any suit that is brought after a specified time since the defendant acted, even if this period ends before the plaintiff has suffered the resulting injury. A statute of repose doesn't matter when the government suffers injury. It doesn't matter when payment is made. And again, in CTS Court, the Supreme Court also recognized that a statute of repose is not measured from the date on which the claim accrues. Not the date on which the claim accrues, but the date of the last culpable act or omission of the defendant. Again, they don't argue or allege that there's any culpable act within the 10-year statute of repose. Their claims are barred, clearly barred, by the 10-year statute of repose. There's no reason to remand this back down. And has this been briefed and argued below? It was argued below. The 10-year span and when it starts and when it stops and the statute of repose? It has been argued. We're not going to look into the record and try to figure this out for ourselves if there hasn't been an opportunity for briefing on that key question. Yes, Your Honor. It has been briefed. It certainly was briefed. We made the argument that it's barred even if the court overruled Sakanga. I will admit, because a lot of the briefing did focus on Sakanga, it probably wasn't as in-depth as maybe it could have been. But certainly, it was argued down below. It was argued to this court that, look, I mean, Sakanga clearly barred their claims when it was good law. But the fact is that it doesn't matter. Their claims are barred regardless. I mean, their allegation is that we had a loan in 2002 that they didn't file their complaint until 2014. I mean, at that point, you know, the statute is clear. It's not when the government makes payment. It's when the violation occurs. And the violation in this case has to occur prior to the bond closing. Any representations to the government to get the government to give them a loan occur prior to the bond closing. Let me ask you to assume something. Let's assume that the escrow is managed by the federal government, not the state, and that the last payment occurs within the statute of limitation after some certification by the district. So, Your Honor, let me be clear. This is wrong. I mean, the record is absolutely clear. If you look at the bond documents, the escrow is governed by the Utah Treasurer. No, I know that. I asked you to assume it. Oh. I want you to assume that the escrow is managed by the United States government and that the last payment was made based on a certification by the district within the limitation period. Does that change the analysis? Well, no. I mean, I think you still go back to it doesn't matter when payment occurs. It matters when the violation occurs. Well, presumably I have some kind of a certification I have to make for payment, don't I? Your Honor, there is no certification that occurred within the 10-year statute of repose in this case. I mean, their argument is that the last request for payment out of the escrow account, the last time the district said, we've finished the project now. We want the state treasurer to release the remaining retainage amounts. That occurred outside the 10-year statute of repose. The only thing that occurred within the 10-year statute of repose is that the state treasurer then released that money and said, okay, the Division of Drinking Water has affirmed that the project was completed as it was intended to be completed. The state treasurer released that money three days prior to the 10-year statute of repose. That's the only thing in this case that happened. There was no false statement. There was no request for payment from my clients within 10 years of when they filed the complaint. So based on those facts. So even if the U.S. government was the escrow agent in this case, there's still no case. There's no false statement. They cannot point to anything that we did other than receive the money from the state within the 10-year period. Okay. And again, I was. So the request for that last payment was outside the limitations period is what you're telling me. Correct, Your Honor. And they don't allege or argue that it was. They go back to payment. They say this is, you got to, their only hook is to go back to this payment. Now, I also want to point out that there are a couple of things. One is, he said, that their argument throughout this has been payment and not violation. That is absolutely untrue. If you go back to their appellant's reply brief in support of second motion to amend, which we cite throughout this, they say, and this is appellee's supplemental appendix page 6, they say the court should find that the applicable statute of limitations at the earliest began to run on May 3, 2005 because the payment of federal funds does not commit to statute of limitations. This is their argument to the district court when they're asking the court to allow them to file their second motion to amend. The applicable statute of limitations, the payment of funds does not commit to statute of limitations, and the statute of limitations was triggered by EID's false statements. On the next page. Did the district court opine on accrual at all? Accrual on this whole discussion that you're having? Claim made or payment? Only to the extent that Judge Parrish cited extensively to CTS Corp. And Judge Parrish clearly was trying to articulate the difference between a statute of repose, which the Supreme Court has said is not accrual. I mean, we don't need to argue this. The Supreme Court has made absolutely clear that the statute of repose is not based on accrual. It's not based on when the government incurs damages. And this is a statute of repose. Sakanga held that it's a statute of repose. Almost every court that's ever considered the 10-year limitations has said it's a statute of repose. I mean, the words in no event clearly indicate a statute of repose. But I want to go back to their argument where they say that this is what they've argued. They say based on the plain language of the statute, when a violation occurs determines when the statute of limitation begins, not the payment. This is their own argument to the court. The plain language doesn't say payment. They then say the statute of limitations was triggered by EID's false statement to the government on May 3, 2005, and not the actual payment of federally backed funds. So does that mean, David, to the extent the district court made an error by not relying on payment, that they've invited it? Well, no. The district court didn't make an error. The district court just didn't need to reach the next issue. I mean, the district court could say it's barred under the 10th Circuit precedent in Sakanga. There's no way. I mean, the district court's bound by 10th Circuit precedent in Sakanga. And even by their own arguments, they're saying we understand that our claims are barred by the 10th Circuit precedent in Sakanga. Once the government refused to intervene for the second time, that's when the district court said your claims were frivolous because at that point your claims are barred by Sakanga. Now, again, the district court didn't need to go further because their claims were barred. But that doesn't mean that this court needs to remand it back because their claims are still clearly barred under the 10-year statute of repose. And this is a case. So you're contending that the facts are clear and the law is clear and we can affirm a motion to dismiss that was based on a statute of repose ruling that has been reversed by the Supreme Court? The statute of repose ruling hasn't been reversed by the Supreme Court. All the Supreme Court said was six years can apply to key TAM plaintiffs. They didn't say anything about the 10-year statute of repose. Again, our argument has always been Sakanga doesn't matter. I mean, it does to the extent that that was the easiest basis for the district court to dismiss on. But it doesn't matter because their claims are barred under the 10-year statute of repose regardless. But shouldn't we let the district court make that decision? No, Your Honor. I don't believe so because, again, we have a district court that didn't need to get to the next step. But that doesn't mean that this court can't look at absolutely clear statutory law and say the statute doesn't say payment. The district court shouldn't accept this legal argument of payment. And second of all, even if the district court was to accept payment, that payment occurred outside the 10-year statute of repose. I mean, this claim is barred by so many grounds. Remanding back to Judge Parrish, who in her order talked about the difference between a statute of repose and a statute of limitations, she's clearly going to rule one way. I mean, why waste the time and energy remanding back? Your Honors, I want to touch briefly on attorney's fees against Christensen and Jensen why the court erred. In the court's decision, they said Christensen and Jensen continue to litigate this case on behalf of its client. When the court granted Tracy's permission to file the amended complaint, Christensen and Jensen filed a third amended complaint based on factual representations made by Tracy. But, Your Honor, that is not correct. In their briefing to this court, Christensen and Jensen argued, and this is appellant's response in reply brief page 6, had Christensen and Jensen continued to assert that the bond closed on May 3, 2005, C&J would have been asserting a factually unsupportable position based on its knowledge that the bond actually closed on November 21, 2002. Judge Parrish was far too generous in saying that they were relying on factual representations made by their client. They knew by the time they filed their third amended complaint that the bond didn't close on May 3, 2005, that it closed on November 21, 2002. This is the seminal event in their entire case. They're trying to argue we didn't know when the bond closed, and they're trying to, you know, the argument that somehow they could rely on their client and say that they didn't know when this closed. But even if they were, they said by the time we filed our third amended complaint, we knew our facts didn't support our legal position. They came back and argued the exact opposite statutory interpretation to say it's payment. But they just argued in the prior brief it's not payment. The only way they can come back and say it's payment, you know, once they filed, knew that the bond closed on November 22, they should have at that point realized their claims were time barred, not continued to litigate this case, and not filed this appeal. I believe my time is up, Your Honor. Thank you. Obviously at issue is payment. And so cited in the briefing is multiple cases where we believe the statute of limitation has started with payment. That's the Janet case. How do you deal with the Graham case? I don't have that one sitting in front of me. Can you give me that? That's the Supreme Court case that they rely on, I believe. The court says the time limit starts on the date of which the violation of the section is committed. It's the date that the defendant submits the false claim for payment. And I believe we dealt with that in our briefing, and I don't know exactly. Well, you cite one case, Janna, which was decided before the Supreme Court decided Graham. It's a federal court claims case, and it's pretty clear that Graham supersedes Janna, and Janna's reasoning has been criticized based on that. Is there anything else that you would rely on post-Graham? I would rely on the information that we provided in the documentation, which is basically when you have a claim that's seeking actual damages, so not just penalties but actual damages, is that the events necessary to state the government claims do not occur until the government has made full payment of the claim. Because we have to have the government damages involved. Now, part of the question is, and, again, we're stuck on this weird 2005-2002 thing, May 2005 is when DDW closed the project. That was the end of the whole project. We were done. That's what's causing some confusion because that was the date that we thought we were dealing with from the beginning. Once we then later found out about the date that the bond was funded, not closed, the project didn't close in 2002. The representations continue to be made that this project is going to be made pursuant to federal law, that we are not going to be building out a project that is actually for development, that we are not going to be taking advantage. Well, when you found out that the bond closed in 2002 instead of 2005, you changed your legal theory then. Of course we did. And that's the exact time that you should change your legal theory when you've got a complaint. At that state, you don't want to do it later. We thought we had 2005. We weren't worried about it. Once we figured out it wasn't 2005, it's like, okay, dig in. What's going on? What exactly happened? When were payments made? What are the arguments? And then you find the best legal theory that you can possibly find to work with it. The nice thing for us is we still think the payment issue is undecided. And as long as that continues to be undecided, because, again, at any time, had EID stopped the project, where would that money have gone? X amount of money would have gone back to the federal government. They wouldn't have been, quote, unquote, damaged. So assume for me that payment, that you're wrong about payment. Is there a certification within the limitations period? Is a certification made by EID? They had requirements. Or a payment request or an application for the final payment, something saying give us the last payment? The application for the final payment was in September of 2004. That was earlier in the month before that led up to the final payment at the end. They had to certify every single time. No, I understand. Is that last request for payment within the 10-year period? Just outside. Okay. Hence the reason, payment. I'm with you. Okay. Two, one, and out. Thanks. Thank you. Thank you both for your arguments this morning. The case is submitted.